**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

LOUISIANA MANAGEMENT CO., LLC and
ANTHONY B. LOTRUGLIO,

                Plaintiffs,

                                1:24-cv-1017 (AMN/DJS)
    v.

CITY OF SARATOGA SPRINGS, NEW YORK,

                Defendant.

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **HACKER MURPHY LLP** | **JOHN F. HARWICK, ESQ.** |
| 200 Harborside Drive – Suite 300 | |
| Schenectady, NY 12305 | |
| *Attorneys for Plaintiffs* | |
| | |
| **JOHNSON LAWS, LLC** | **APRIL J. LAWS, ESQ.** |
| 646 Plank Road, Suite 205 | **OLIVIA G. REINHARDT, ESQ.** |
| Clifton Park, New York 12065 | |
| *Attorneys for Defendant* | |

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

I.       **INTRODUCTION**

On July 24, 2024, Plaintiffs Louisiana Management Co., LLC and Anthony B. Lotruglio ("Plaintiffs") commenced this action against Defendant the City of Saratoga Springs, New York ("Defendant"), asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983") arising out of the treatment of Plaintiffs' property at 182 Excelsior Avenue. Dkt. No. 2 ("Complaint"). Presently before the Court is Defendant's motion to dismiss the Complaint pursuant to Rules 12(b)(6), 12(b)(7), and 8(a)(2) of the Federal Rules of Civil Procedure. Dkt. No. 8 (the "Motion"). Plaintiffs filed papers in opposition and requested an opportunity to replead should the Court find dismissal

is warranted.  Dkt. No. 19.  Defendant filed reply papers in further support of the motion and opposing the opportunity to replead.  Dkt. No. 24.

For the reasons set forth below, the Motion is granted, but Plaintiffs are granted leave to replead based on the allegations set forth in Plaintiff Lotruglio's declaration.

## II.    BACKGROUND

The following facts are drawn from the Complaint unless otherwise noted and are assumed to be true for purposes of ruling on the Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (*per curiam*).

Plaintiff Louisiana Management Co., LLC ("Louisiana Management") is a New York Company with a principal place of business in Saratoga Springs, New York.  Dkt. No. 2 at ¶ 1. Plaintiff Anthony B. Lotruglio is a resident of the City of Saratoga Springs, New York and is a managing member and owner of Louisiana Management.  *Id.* at ¶ 2.  Louisiana Management owned the property at 182 Excelsior Avenue in Saratoga Springs, New York starting on or about June 2, 2004.  *Id.* at ¶ 3 (the "Property").

The Complaint alleges that as of June 15, 2022, the Property was worth $1,600,000.  *Id.* at ¶ 4.  However, on or about January 11, 2023, Defendant allegedly accepted an application of a third party, not named in the Complaint, to rezone the Property.  The Complaint alleges the third party's zoning application contained false statements and was otherwise flawed.  *Id.* at ¶¶ 11-15. Generally, the Complaint alleges that the application was used as a "threat of unilaterally reclassifying and rezoning the Plaintiffs' property to extract concessions from the Plaintiffs."  *Id.* at ¶ 27.  The Complaint also asserts that the acceptance of the flawed application "significantly delay[ed] the development of the [Property] and reduce[d] its value."  *Id.* at ¶¶ 16-17.  Specifically, Plaintiffs allege Defendant's actions caused a loss in rental revenue and a $250,000 diminution in

the Property's value.  *Id.* at ¶ 18-20.

Based on these allegations, Plaintiffs sued in New York State Supreme Court in Saratoga County.  Dkt. No. 2.  Prior to filing the Complaint and pursuant to New York State General Municipal Law ("N.Y. Gen. Mun. L.") § 50-e(2), Plaintiffs filed a Notice of Claim on April 9, 2024. Dkt. No. 8-1.[1]  Construing the Complaint broadly, Plaintiffs assert that Defendant's actions violated his Constitutional rights against regulatory takings and unequal protection and violated his same rights under the New York State Constitution.  Defendant removed the case to this Court on August 19, 2024 and subsequently filed the Motion on August 26, 2024.  Dkt. Nos. 1 and 8.

## III.     STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111–12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  This presumption, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleadings, the court may consider documents that are "integral" to the pleadings even if they are neither physically attached to, nor incorporated by reference into, the pleadings.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir.2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to

---

[1] The Court takes judicial notice of the Notice of Claim.  *See Clark v. New York City Housing Authority*, 514 F. Supp. 3d 607, 611 n.3 (S.D.N.Y. 2021) (taking judicial notice of Notice of Claim documents for purpose of assessing viability under N.Y. Gen. Mun. L. § 50-e).

relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (quotation omitted). Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *id.* at 570.

Dismissal of an action under Rule 12(b)(7) is required where a plaintiff fails to join an indispensable party under Rule 19. *Fed. Ins. Co. v. SafeNet, Inc.*, 758 F. Supp. 2d 251, 257 (S.D.N.Y. 2010) (citing *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000)). In deciding a 12(b)(7) motion, the court must accept all factual allegations in the complaint as true and may go beyond the pleadings to consider extrinsic evidence such as affidavits. *Plymouth Res., LLC. v. Norse Energy Corp. USA*, 3:2010-cv-909 (NAM/DEP), 2011 WL 13234819, at *10 (N.D.N.Y. Mar. 10, 2011) (citing *Davis Co. v. Emerald Casino, Inc.*, 268 F.3d 477, 479 (7th Cir. 2001)). The movant carries the burden to prove that the joinder of required parties is not feasible, and that dismissal is required. *Monbo v. Nathan*, 623 F. Supp. 3d 56, 130 (E.D.N.Y. 2022); *see also Holland v. Fahnestock & Co.*, 210 F.R.D. 487, 495 (S.D.N.Y. 2002).

## IV.     DISCUSSION

### A.  Documents Outside the Complaint

Both parties request that the Court consider facts outside of the four corners of the Complaint.  Defendant asks this Court to consider Plaintiff Lotruglio's various statements made during an examination pursuant to New York General Municipal Law § 50-h ("§ 50-h").  Dkt. No. 8-4 at 14-15 (citing Dkt. No. 8-2 (the "examination")).  In turn, Plaintiffs ask this Court to consider facts espoused by Plaintiff Lotruglio in a declaration filed alongside the response to the Motion and the various exhibits attached to that declaration.  Dkt. No. 19 at 7-13 (citing Dkt. No. 19-1 (the "declaration")).

On a Rule 12(b)(6) motion to dismiss, a court "may review only a narrow universe of materials," which includes "facts stated on the face of the complaint, [] documents appended to the complaint or incorporated in the complaint by reference, ... matters of which judicial notice may be taken," and "document[s] not expressly incorporated by reference in the complaint [that are] nevertheless 'integral' to the complaint." *Goel v. Bunge, Ltd.,* 820 F.3d 554, 559 (2d Cir. 2016) (internal citation omitted).  "A document is incorporated by reference if the complaint makes, 'a clear, definite and substantial reference to the document[].'" *Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 608 (E.D.N.Y. Sep. 30, 2017).  In contrast, "where a complaint relies heavily upon [a document's] terms and effect," the document is "integral to the complaint and, accordingly, a fair object of consideration on a motion to dismiss." *Goel*, 820 F.3d at 559 (internal quotation marks omitted).  "A document is integral to the complaint where the plaintiff (1) has 'actual notice' of the document and its information and (2) has 'relied upon the[] document[] in framing the complaint.'" *McLennon v. City of New York*, 171 F. Supp. 3d 69, 89 (E.D.N.Y. 2016) (alteration in original) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

"Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering limited quotations from the document is not enough." *Goel*, 820 F.3d at 559 (alteration, internal quotation marks and citations omitted).

The Court does not consider the facts purportedly revealed in the examination for purposes of deciding the Rule 12(b)(6) motion. Defendant avers that the Court may consider the examination because the "documents are referenced and are an integral part of the facts alleged in the Complaint[.]" Dkt. No. 8-4 at 15 n.3. "[T]he great weight of authority on [the issue of considering § 50-h testimony on a motion to dismiss] establishes that courts generally may not consider 50-h examination transcripts[.]" *Gurrieri v. Cnty. of Nassau*, No. 2:16-cv-6983 (ADS)(SIL), 2018 WL 6590564, *5 (E.D.N.Y. Dec. 14, 2018) (collecting cases); *see also Oper v. Capital District Regional Off-Track Betting Corp.*, 1:20-CV-1415 (FJS/CFH), 2021 WL 6062953, at *2 (N.D.N.Y. Dec. 22, 2021) (excluding consideration of § 50-h testimony on a motion to dismiss); *Shaw v. Rondout Valley Cent. Sch. Dist.*, No. 1:15-cv-00215 (MAD/TWD), 2015 WL 8492487 *4 (N.D.N.Y. Dec. 10, 2015) (declining to consider a § 50-h hearing transcript on a motion to dismiss to the extent that it contained additional facts not alleged in the complaint). This Court sees no reason to depart from this precedent.

Nor does the Court consider the information detailed in the declaration and the exhibits attached thereto filed in response to the Motion for purposes of the Rule 12(b)(6) motion. "The Second Circuit has held that consideration of affidavits, exhibits, or factual assertions contained in legal memoranda is reversible error." *Stinnett*, 278 F. Supp. 3d at 609 (citing *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000)). Plaintiffs provide no basis for this Court's ability to consider the declaration despite frequently relying on the facts asserted therein. Indeed, Plaintiffs acknowledge the discrepancy between the level of factual detail provided in the Complaint and the

declaration and requests that, should this Court find the Complaint fails to assert a claim, leave to replead based on the facts asserted in the declaration should be granted. Dkt. No. 19 at 27. Because the declaration is not attached to, incorporated by reference into, or integral to the Complaint, the Court does not consider its contents. *See Goel*, 820 F.3d at 559.

Therefore, the Court contains its analysis of the Rule 12(b)(6) motion to the facts alleged in the Complaint itself. However, the Court may consider the additional materials in relation to the portion of the Motion made under Fed. R. Civ. P. 12(b)(7). *See Plymouth Res., LLC*, 2011 WL 13234819, at *10 (citation omitted).

## B. Necessary Parties

Defendant first argues that the Complaint should be dismissed for failure to join necessary parties under Fed. R. Civ. P. 12(b)(7). Dkt. No. 8-4 at 18-21. In short, Defendant asserts that Plaintiffs should have named the eventual buyer of the Property and the third party which filed the application for the change in the Property's zoning restrictions as additional defendants because they are indispensable parties. Plaintiffs disagree.

"Fed. R. Civ. P. 19 sets forth a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party." *Viacom Intern., Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000). "First, the court must determine whether an absent party belongs in the suit, i.e., whether the party qualifies as a 'necessary' party under Rule 19(a)." *Id.* (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 124 (1968)). Under Rule 19(a), a party should be joined, if feasible, where:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed

interest.

Rule 19(a). If a party fails at the first step, there is no need to move on to step two. However, where a party is found to be necessary under Rule 19(a), the Court must assess whether "joinder of the absent party" is possible before ultimately determining whether the absent party is "indispensable." *Viacom*, 212 F.3d at 725. If the party is indispensable and joinder is not possible, the court must dismiss the action. *See* Rule 19(b).

The Court need not grant the Rule 12(b)(7) Motion because Defendant has failed to carry its burden to establish the existence of indispensable parties. As Plaintiffs argue, "it has long been established that under federal law, neither joint tortfeasors nor co-conspirators are indispensable parties." *Donovan v. H.C. Assocs., Inc.*, 174 F.R.D. 12, 15 (N.D.N.Y. 1997) (citation omitted); *see also Samaha v. Presbyterian Hosp.*, 757 F.2d 529, 531 (2d Cir. 1985) ("[I]t is settled federal law that joint tortfeasors are not indispensable parties."); *Spinelli v. National Football League*, 96 F. Supp. 3d 81, 104 (S.D.N.Y. Mar. 27, 2015) ("alleged co-conspirators 'are not necessary parties; a plaintiff can prove the existence of a conspiracy in an action against just one of the members of the conspiracy.'") (citation omitted). In reply, Defendant acknowledges that "not all [] conspirators are necessary parties[,]" but argues that "it does not follow that a co-conspirator cannot be a necessary party." Dkt. No. 24-2 at 12 (quoting *Meyer v. Kalanick*, 15 Civ. 9796, 2016 WL 3509496, at *3 (S.D.N.Y. June 20, 2016)). But Defendant fails to point to any of the scenarios listed in Rule 19(a) which might justify a finding that the additional parties are even necessary, let alone indispensable. Defendant asserts that the actions which Plaintiffs "take issue" with are not its own, but instead, are solely the responsibility of the buyer and the applicant. *Id.* But drawing all reasonable inferences from the Complaint, and after examining the additional materials filed, the Court finds that Plaintiffs have alleged that Defendant engaged in independent acts which

deprived Plaintiffs of their rights. *Supra* Section IV(E)(i). Defendant has failed to establish that "complete relief cannot be accorded among those already parties[,]" and therefore, the Court will not dismiss the Complaint on this ground. Rule 19(a).

### C. Federal Claims

The Court construes the Complaint to assert two claims arising under federal law: 1) a regulatory takings claim under the Fifth Amendment, and 2) a reverse spot zoning claim under the Equal Protection clause. *See generally*, Dkt. No. 2; *see also* Dkt. No. 19 (interpreting the Complaint similarly). Defendant asserts several arguments that it says warrant dismissal, but the Court need only address two: that these claims are moot and unripe and that they are improperly alleged against the City of Saratoga Springs.

First, Defendant's argument that the federal regulatory takings claim is moot and/or unripe relies on consideration of materials outside the four corners of the Complaint. Defendant argues that the ultimate sale of the Property, Plaintiffs' purported desire to sell the Property for several years, and the fact that the Property was never actually rezoned defeats the regulatory takings claim. But in doing so, Defendant relies entirely on Plaintiff Lotruglio's sworn § 50-h testimony to establish these allegedly crucial facts. *See* Dkt. No. 8-4 at 21-24 (citing Dkt. No. 8-2). Because the Court has already determined that such information is outside the proper scope of its Rule 12(b)(6) review, Defendant's arguments fail for purposes of the Motion.[2]

However, the Court agrees with Defendant that the federal claims are improperly asserted against the City of Saratoga Springs because the Complaint fails to allege that the deprivation of Plaintiffs' property rights was the result of Defendant's customs or policies. "[A] local

---

[2] As noted below, however, amendment based on the facts in the declaration is not futile despite the ripeness and mootness arguments.

government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Serv's of City of New York*, 436 U.S. 658, 694 (1978). Therefore, to assert a Section 1983 claim against a municipality based on the violation of constitutional rights, "a plaintiff must 'make factual allegations that support a plausible inference that the [alleged] constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policy making authority for the municipality.'" *Mendez v. Cayuga Cnty.*, 9:21-cv-1090 (BKS/TWD), 2024 WL 1251541, at *2 (N.D.N.Y. Mar. 25, 2024) (quoting *Missel v. Cnty. of Monroe*, 351 Fed. App'x 543, 545 (2d Cir. 2009)). A municipality cannot be held liable based solely on *respondeat superior*. *Id.* Instead, the Complaint must allege that a policy or custom of the municipality caused the alleged harm. *Id.* (citing *Sims v. City of New York*, No. 15-CV-2485, 2018 WL 11605048, at *4 (S.D.N.Y. Dec. 17, 2018)). Therefore, for both the regulatory takings and equal protection claims to survive, Plaintiffs must allege a municipal custom or policy.

"The existence of a municipal policy or custom may be plead in any of four ways: '(1) a policy formally adopted and endorsed by the municipality; (2) actions taken by policymaking officials that caused the particular deprivation alleged; (3) practices by subordinate officials that are not expressly authorized but are so widespread and consistent that policymakers must have been aware of them; or (4) a failure by policymakers to train or supervise that amounts to deliberate indifference to the rights of those who come into contact with the inadequately trained or supervised municipal employees.'" *Id.* at *3 (quoting *Crawley v. City of Syracuse*, 496 F. Supp.

3d 718, 729 (N.D.N.Y. 2020)).  "Once a plaintiff has demonstrated the existence of a municipal policy, a plaintiff must then establish a causal connection, or an 'affirmative link,' between the policy and the deprivation of his constitutional rights."  *Id.* (quoting *Deferio v. City of Syracuse*, 770 Fed. App'x 587, 589 (2d Cir. 2019)).

Even liberally construed, the Complaint fails to adequately allege a policy or custom on its own.  The Complaint's explicit references to a formal policy are cursory, and in one of two instances pled upon information and belief.  Dkt. No. 2 at ¶¶ 14, 32-34; *see Mendez*, 2024 WL 1251541, at *3 ("Boilerplate statements that county employees were acting in accord with a municipal policy, with no facts to support those statements, are not sufficient to support a *Monell* claim.") (internal quotation marks and citation omitted). Reading the Complaint more broadly, Plaintiffs appear to base their claim of municipal liability on the acts of Defendant's employees in accepting a zoning application regarding the Property and working to rezone the Property with other actors.  Dkt. No. 2 at ¶¶ 11-16, 22-24.  In response to the Motion, Plaintiffs assert that these allegations are sufficient to establish that Defendant is liable through the acts of its policymakers.[3] Dkt. No. 19 at 18-19; *see also Mendez*, 2024 WL 1251541, at *3.  However, in doing so, Plaintiffs rely entirely on allegations which are absent from the Complaint, but which are made in Plaintiff Lotruglio's impermissible declaration.  *See* Dkt. No. 19 at 18 (noting the involvement of the city's Mayor, Design Review Board, and Planning Board, none of which are mentioned in the Complaint

---

[3] The Complaint also briefly mentions Defendant's failure to train its employees.  Dkt. No. 2 at ¶ 16.  However, in response to the Motion, Plaintiffs only assert that the Complaint plausibly alleges municipal liability through the acts of Defendant's final policymakers, not Defendant's failure to train its employees.  Dkt. No. 19 at 18-19.  Regardless, the Complaint's boilerplate mention of an alleged failure to train employees is insufficient to survive dismissal for failure to adequately plead *Monell* liability.  *See Wilson v. Cnty. of Onondaga*, 5:20-CV-1489 (DNH/TWD), 2022 WL 3141764, at *7 (N.D.N.Y. Apr. 21, 2022).  Neither the Complaint nor Plaintiffs' response to the Motion appear to suggest that Defendant's employees were acting pursuant to a widespread custom.

itself).   Without allegations of specific policymakers' involvement, the Complaint fails to adequately assert claims based on *Monell* liability.  *See Berry v. Village of Millbrook*, 815 F. Supp. 2d 711, 720 (S.D.N.Y. 2011) (dismissing a *Monell* claim because the complaint "failed to identify any [] policymaker"); *Pistello v. Bd. of Educ. of Canastota Cent. Sch. Dist.*, 5:16-CV-0212 (LEK/ATB), 2017 WL 1194025, at *12 (N.D.N.Y. Mar. 30, 2017) (granting dismissal where plaintiff "failed to identify a final policymaker" in the complaint).

Given the Complaint's failure to allege municipality liability pursuant to *Monell*, both federal law claims must be dismissed.   The Court need not address Defendant's remaining arguments.

### D.  State Law Claims

The Court need not consider the arguments regarding Plaintiffs' state law claims.  "With Plaintiffs' federal claims dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state claims."  *Torres v. City of New York*, 590 F. Supp. 3d 610, 629 (S.D.N.Y. 2022).  Indeed, "[a] district court usually should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) (citation omitted).

### E.  Leave to Replead

Plaintiffs request that the Court grant leave to replead in the event that it finds the Complaint must be dismissed.  Dkt. No. 19 at 27.  Plaintiffs assert that the amended pleading "would recite the facts as they are presented in [the] [d]eclaration."  *Id.*  Defendant argues that such an amendment would be futile because the declaration "contains no plead facts that demonstrate any action by the City and/or its agents that amount to an unconstitutional taking under the Fifth Amendment or a claim for spot zoning."  Dkt. No. 24-2 at 9.

"It is the usual practice upon granting a motion to dismiss to allow leave to replead. Although leave to replead is within the discretion of the district court, refusal to grant it without any justifying reason is an abuse of discretion." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991) (internal citations omitted). Leave to replead may be denied based on "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party . . ., futility of amendment, etc." *Ruotolo v. City of New York*, 514 F. 3d 184, 191 (2d Cir. 2008). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(6)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) (citing *Cortec Indus., Inc.*, 949 F.2d at 50). In making a futility determination, the court must "consider 'the proposed amendment[s] ... along with the remainder of the complaint,' accept as true all non-conclusory factual allegations therein, and draw all reasonable inferences in plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement to relief." *Id.* (internal citation omitted).

In summary, the declaration provides additional color to the allegations set forth in the Complaint. In the declaration, Plaintiff Lotruglio avers that in 2022, Plaintiffs received an offer to purchase the Property from Green Springs Management ("Green Springs"), and that they entered into a preliminary agreement with Green Springs to sell the Property for $1.6 million. Dkt. No. 19-1 at ¶¶ 1-5. Green Springs intended to use the Property to develop a modern apartment complex, and thus, needed approval from Defendant to raze two buildings on the Property. *Id.* at ¶ 6. While they awaited approval, a nonprofit called the Saratoga Springs Preservation Foundation (the "Foundation") applied to Defendant for a "text amendment zoning change," which was

ultimately taken by Defendant as an application to designate the Property as a historic landmark. *Id.* at ¶ 7. The declaration alleges that the Foundation is, in part, funded by Defendant. *Id.* at ¶ 8.

According to the declaration, such an application can only be made by the owner of the Property, or a lessee or purchaser with the owner's permission under local law. *Id.* at ¶ 10. Therefore, the application filed by the Foundation was allegedly improper; the Foundation did not inform Plaintiffs of its application, let alone seek their approval. *Id.* at ¶ 9.[4]

The application was first considered by Defendant's Design Review Board, which held public meetings to discuss the application on March 1, 2023 and April 5, 2023. *Id.* at ¶¶ 15-17. Plaintiffs appeared at both meetings and expressed their legal objections to the application. *Id.* The objections were noted but ignored. *Id.* Ultimately, the Design Review Board rendered an advisory opinion in support of that application's merits to the Mayor. *Id.* at ¶ 18. The application was then put before the City Planning Board, and again, Plaintiffs made objections as to the application's unlawfulness, this time through written comment. *Id.* at ¶ 19. Despite the objection, the Planning Board recommended that the City approve the application. *Id.* at ¶¶ 19-20.

According to the declaration, the Mayor then established a committee to reach potential solutions as to what to do with the Property, even after hearing directly from Plaintiffs regarding the application's illegality. *Id.* at ¶¶ 21-23. The committee excluded Plaintiffs but included Green Springs and the Foundation. *Id.* at ¶ 23. Months later, Green Springs reached an agreement with the Foundation to preserve the buildings on the Property in a new location in exchange for the Foundation withdrawing its application with the City. *Id.* at ¶ 25. This agreement, Plaintiff Lotruglio avers, caused Green Springs to demand a decrease in the price of the Property by

---

[4] Defendant does not, at this stage, explicitly contest that such an application requires the approval of the property owners under local law.

$250,000, and due to the length and burden of Defendant's consideration of the allegedly improper application, Plaintiffs were no longer in a financial position to demand a higher selling price. *Id.* at ¶¶ 26-27.  In particular, Plaintiff Lotruglio avers that in anticipation of the deal going through with Green Springs and the buildings being demolished, Plaintiffs vacated all of the tenants at the Property in the months leading up to the eventual sale of the Property, and thus Plaintiffs "did not have the resources to carry the Property without rental income." *Id.*  Thus, Plaintiffs agreed to the sale of the Property at the lower value, which was approximately a decrease of 15%. *Id.* at ¶ 28.

In responding to Plaintiffs' request to replead in the event of dismissal, Defendant argues that because the declaration reiterates that the total diminution in the Property's value was approximately 15%, and because the alleged diminution was caused by the actions of third parties and not the actions of Defendant, any amended pleadings would be insufficient to state a claim. Dkt. No. 24-2 at 9.  However, given that the parties briefed the Motion, in part, as though the proposed amendments contained within the declaration (and similar facts included in the § 50-h examination) were properly alleged and before this Court, the Court proceeds to also examine the other arguments raised by Defendant outside of its specific response to Plaintiffs' request to replead. *See Panther Partners*, 681 F.3d at 119 (equating the futility standard for granting leave to replead with whether proposed allegations would survive a motion to dismiss).  In effect, the Court evaluates whether the assertions set forth in the declaration could serve as an adequate basis to propose amendments to the Complaint which are not futile.[5]

---

[5] Though the Court engages in a thorough analysis of the proposed allegations in the declaration to assess futility, it does so for the sake of preserving judicial resources and avoiding the parties re-litigating the very same arguments on a new motion to dismiss.  The Court notes that it may grant leave to replead as a matter of discretion. *See, e.g., Cookware Co. (USA), LLC v. Austin*, 15 Civ. 5796 (DAB), 2016 WL 7378762, at *5 (S.D.N.Y. Dec. 8, 2016) (granting leave to replead where amendments "*may* not be futile") (emphasis added); *Kramer v. Lockwood Pension Serv's,*

### i. Federal Claims

In the declaration, Plaintiff Lotruglio does not purport to assert new claims, but instead, merely adds factual allegations to support the existing claims.  Thus, the Court must assess whether these additional factual allegations plausibly allege a takings claim and an equal protection claim.

The Court finds that the shortcomings in the current Complaint with respect to *Monell* are remedied by the proposed amendments in the declaration.  Plaintiff Lotruglio specifically avers that several actions of the Mayor and various municipal boards led to the diminution in the Property's value and a forced sale, including the Mayor's creation of a special committee, the Design Review Board's decision to recommend approval of the application, the City Planning Board's issuance of a letter recommending that the City approve the application, and all three offices' failure to dismiss the application outright in response to Plaintiffs' objections, all of which delayed the ultimate determination of the application.  *See* Dkt. No. 19-1 at 5-7.  Such actions and inaction, at this stage, satisfy the need for a municipal "policy or custom" because such actors have been found to constitute "final policymakers."  *See, e.g., Patterson v. City of Utica*, 370 F.3d 322, 331 (2d Cir. 2004) (finding a city may be liable under *Monell* for the actions of its Mayor); *Davis v. Town of Hempstead*, 167 Fed. Appx. 235, 239 (2d Cir. 2006) (finding the actions of a municipal board, acting within its area of authority, may establish liability under *Monell*).  Nor does the lack of a formal regulation disclose municipal liability for the deprivation of constitutional rights, as Defendant asserts.  *See Cash v. County of Erie*, 654 F.3d 324, 334 (2d. Cir. 2011) ("A municipal policy may be pronounced or tacit and reflected in either action or inaction."); *Polizzi v. County of Schoharie*, 720 F. Supp. 3d 141, 148 (N.D.N.Y. 2024) ("the policy or custom need not be

_____

*Inc.*, 653 F. Supp. 2d 354, 380 (S.D.N.Y. 2009) ("leave *is not required* [] where any attempt to replead would be futile") (emphasis added).

16

memorialized in a specific rule or regulation and may be reflected in either action *or inaction*.") (emphasis added); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (finding municipal liability is possible where "a government [] chooses a course of action tailored to a particular situation and not intended to control decisions in later situations.").  To the extent that Defendant argues that the actions of the Property buyer and the nonprofit were the true cause of the diminution in the value of the Property and not the actions of Defendant, the Court finds that such causation questions do not establish futility.  A municipal liability claim requires that Plaintiffs show the actions, policies, or customs of Defendant were the "moving force" behind the alleged constitutional injury.  *See Bd. of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997).  Here, the declaration reveals an alleged direct connection between Defendant's treatment of an allegedly improper zoning application and the eventual diminution in the Property's value and Plaintiffs' loss of rental revenue.  Based on the facts in the declaration, it is plausible that Defendant's handling of the disputed application played a substantial role in the ultimate decrease in the sale price by depriving Plaintiffs of negotiating leverage and diminishing rental income.  Therefore, the Court cannot find that amendment based on the declaration would be futile based on the requirements of *Monell*.

The Court also finds that amending the regulatory takings claim based on the allegations in the declaration would not otherwise be futile.  First, to be ripe for judicial review, an alleged regulatory taking in the land use context is typically subject to a finality requirement, meaning that the allegations usually must identify a final regulation or decision that has been imposed.  *Sherman v. Town of Chester*, 752 F.3d 554, 561 (2d Cir. 2014).  However, "[g]overnment authorities, of course, may not burden property by imposition of repetitive or unfair land-use procedures in order to avoid a final decision."  *Id.* (quoting *Palazzolo v. Rhode Island*, 533 U.S. 606, 621 (2001)).

Thus, the Court may "consider the 'defendant's hostility, delay and obstruction'" to determine whether the finality requirement applies. *Lubavitch of Old Westbury, Inc. v. Inc. Vill. of Old Westbury, New York*, 2:08-cv-5081 (DRH) (ARL), 2021 WL 4472852, at *12 (E.D.N.Y. Sep. 20, 2021) (quoting *545 Halsey Lane Props., LLC v. Town of Southampton*, 2015 WL 2213320, at *6 (E.D.N.Y. May 8, 2015)). Though the finality requirement applies to many kinds of claims in the land-use context, *see Murphy v. New Milford Zoning Com'n*, 402 F.3d 342, 349 (2d Cir. 2005) (listing cases), the Second Circuit has noted that it does not apply where a plaintiff alleges "an injury independent of the city's ultimate land-use decision." *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 123 (2d Cir. 2014); *see also Vill. Green at Sayville, LLC v. Town of Islip*, 43 F.4th 287, 295 (2d Cir. 2022).

Here, Plaintiffs do not allege an injury resulting from a zoning *decision*, but instead, assert that they were injured by the City's *acceptance and consideration* of the Foundation's allegedly illegitimate application. It is the process employed by the City which allegedly forced Plaintiffs to sell the Property on unfavorable terms. Therefore, a final decision on the Foundation's application "would do nothing to further define [the] injury[,]" because the harm was done, and thus, the finality requirement does not apply. *Sunrise*, 769 F.3d at 123; *see also Grand Medford Estates, LLC v. Town of Brookhaven*, 22-CV-7834 (ARR) (ARL), 2024 WL 185318, at *13 (E.D.N.Y. Jan. 17, 2024); *Rehab. Supp. Serv's, Inc. v. Town of Colonie*, 1:15-CV-589 (FJS/DJS), 2018 WL 1415199, at *7 (N.D.N.Y. Mar. 20, 2018); *Rosendale v. Brusie*, No. 07-CV-8149, 2009 WL 778418, at *7 (S.D.N.Y. Mar. 25, 2009). Defendant's attempt to distinguish *Sherman* does not establish futility. Though the court faced a "decade of obstruction" in that case, the court did not aver that such a period of obstruction was required to avoid the finality requirement. 752 F.3d at 563. Instead, the court focused on whether the defendant's actions were "unreasonable,

duplicative, or unjust as to make the conduct farcical[.]" *Id.* Most importantly, in both cases, the plaintiffs sued based on injuries stemming from the municipality's process itself, rather than the imposition of an actual regulation.[6]

Having established that the regulatory takings claim is ripe, the Court moves on to assess whether the proposed amendments are futile on the merits. In assessing non-categorical regulatory takings claims, as alleged here, courts engage in a flexible assessment of several factors, including "(1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the governmental action." *Comm. Hous. Improvement Prog. v. City of New York*, 59 F. 4th 540, 553 (2d Cir. 2023) (internal quotation marks and citation omitted).

Under the first factor, that the total diminution of the Property totals approximately 15% does not establish, as a matter of law, that Plaintiffs cannot successfully plead a regulatory takings claim. Defendant points to several cases in which courts have found that amounts similar to, and far above, the alleged decrease in the Property's value were insufficient to satisfy this factor. *See* Dkt. No. 8-4 at 29-31. The Court acknowledges this precedent and finds that the relatively small amount of diminution in the Property's value weighs against Plaintiffs. *See, e.g., S. Nassau Bldg. Corp. v. Town Bd. of Town of Hempstead*, 624 F. Supp. 3d 261, 276 (E.D.N.Y. Aug. 17, 2022) (finding a 15% diminution in value weighs against a plaintiff's takings claim). However, unlike in Defendant's cases, the diminution in value is not the sole economic impact alleged. Where a

---

[6] In the alternative, the finality ripeness requirement is "prudential" and the Court "may determine that in some instances, the rule should not apply[.]" *Sherman*, 752 F.3d at 561 (citation and quotation marks omitted). Even if the finality requirement were potentially applicable, the Court would find that it should not apply for the reasons discussed above. *See Singer v. City of New York*, 417 F. Supp. 3d 297, 316 (S.D.N.Y. 2019) (declining to apply the finality requirement because "the allegations in [the] case do not well fit" with the dictates of the requirement and because "the record is not lacking" despite the lack of a final decision).

defendant "prevent[ed] [plaintiffs] from maintaining ownership in the property" and where a plaintiff was "force[d] [] to sell the property[,]" this Court has found that the economic impact factor weighs in favor of plaintiffs at the motion to dismiss stage. *Calvey v. Town Board of North Elba*, 8:20-CV-711 (TJM/CFH), 2021 WL 1146283, at *19 (N.D.N.Y. Mar. 25, 2021). In *Calvey*, the Court found that a regulation which limited the plaintiff's "ability to obtain short-term rental income to half the number of days previously available[,]" and ultimately caused $10,000 in losses annually satisfied the economic impact prong of the analysis because the plaintiff alleged "[t]he regulations w[ould] force them to sell the property." *Id.* The Court found that the factor weighed in favor of the plaintiff despite the defendant's argument "that the amount of [the plaintiff's] loss is insufficient for a takings claim." *Id.* Here, Plaintiff Lotruglio asserts in the declaration that as a result of "phas[ing] out its tenants at the Property" in anticipation of the sale, Plaintiffs "could not afford to continue carrying the Property and had little choice but keep Green Springs as a purchaser[,]" as a result of Defendant's actions. Dkt. No. 19-1 at ¶ 27. Thus, Defendant's actions led not just to a decrease in the value of the Property, but effectively forced a sale to Green Springs. In light of this, and drawing all reasonable inferences from the facts in the declaration, the Court finds the first factor weighs in favor of Plaintiff at this stage, and thus, does not establish futility.

The Court finds that the second factor weighs in favor of Plaintiffs' ability to replead based on the allegations in the declaration. "The purpose of the investment-backed expectation requirement is to limit recovery to owners who could demonstrate that they bought their property in reliance on a state of affairs that did not include the challenged regulatory regime." *Allen v. Cuomo*, 100 F.3d 253, 262 (2d Cir. 1996) (internal quotations omitted). "[T]he critical time for considering investment-backed expectations is the time a property is acquired, not the time the challenged regulation is enacted." *Meriden Tr. & Safe Deposit Co. v. FDIC*, 62 F.3d 449, 454 (2d

Cir. 1995). Here, when Plaintiffs bought the Property, it was not encumbered by the zoning restrictions or landmark status sought in the application considered by Defendant (nor had a similar application been filed), and Plaintiffs expected to be able to continue using the Property, unencumbered, up until its ultimate sale. *See* Dkt. No. 19-1 at ¶ 3. The Court easily concludes that, like in *Sherman*, Defendant's alleged actions "interfered with [Plaintiffs'] investment-backed expectations" because Plaintiffs "could not have expected the [Defendant's]" allegedly unlawful consideration of a zoning application related to their Property, especially because local law purportedly requires that such applications be filed with the owner's consent. 752 F.3d at 565. That Defendant ultimately did not impose actual zoning restrictions on the Property does not preclude such a finding on the second factor. *See id.* (finding interference with expectations based on "obstruction").

Finally, the Court also finds the third factor weighs in favor of Plaintiffs' ability to replead based on the allegations in the declaration. Typically, an assessment under this factor looks to whether the defendant's actions "can be characterized as a physical invasion by government[,]" which would weigh in favor of the plaintiffs. *Calvey*, 2021 WL 1146283, at *20 (citations omitted). However, the Second Circuit has recognized that this factor is "the most elusive" and that it may also weigh in favor of plaintiffs where a defendant is alleged to have "singled out" the plaintiffs and used "red tape" to hinder use of property. *Sherman*, 752 F.3d at 565. Finally, courts assess whether the alleged actions were motivated by "the benefit of private parties," or a desire to serve "important public interests." *74 Pinehurst LLC v. New York*, 59 F.4th 557, 568 (2d Cir. 2023) (quoting *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 485–86 (1987)). In the declaration, Plaintiff Lotruglio avers that Defendant accepted and considered a zoning application which was unlawfully filed, and that it did so knowing that the application was

unlawful. Defendant also allegedly held multiple hearings on the issue, sometimes without first informing Plaintiffs, and created a committee to propose solutions regarding the Property which excluded Plaintiffs, the sole actors purportedly legally capable of making the zoning application in the first place. Such actions appear to invoke the fundamental question posed to courts in assessing regulatory takings claims: whether "justice and fairness require that economic injuries [. . .] be compensated by the government." *See Eastern Enterprises v. Apfel*, 524 U.S. 498, 523 (1998); *Comm'n Hous. Improv. Prog. v. City of New York*, 492 F. Supp. 3d 33, 46 (E.D.N.Y. 2020), *aff'd by Comm. Hous. Improvement Prog.*, 59 F. 4th 540 (2d Cir. 2023); *see also Haller v. U.S. Dep't of Health and Human Serv's*, 22-3054, 2024 WL 290440, at *2 (2d Cir. Jan. 23, 2024) (summary order) (noting the inquiry requires a determination of whether the actions "*unreasonably* impair" the Property's value) (emphasis in original). Though the zoning application in question, which sought to preserve buildings on the Property as historic landmarks, is the kind of action which is typically considered to serve "important public interests[,]" the manner in which the application was allegedly filed and considered (with knowing disregard to local legal requirements) weighs in favor of allowing Plaintiffs to amend. *74 Pinehurst LLC*, 59 F.4th at 568. Therefore, the Court finds that it would not be futile to amend the regulatory takings claim in the Complaint based on the allegations in the declaration.

As to the other federal claim, an alleged violation of Plaintiffs' rights to equal protection, the Court finds that amendment based on the allegations in the declaration would be futile, and thus, Plaintiffs are not granted leave to replead the reverse spot zoning equal protection claim. Spot zoning is "the process of singling out a small parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner of such property and to the detriment of other owners." *301 East 66th Street Condo. Corp. v. City of New York*, 224 A.D.3d

423, 425 (1st Dep't 2024).   In contrast, "[r]everse spot zoning is 'a land-use decision which arbitrarily singles out a particular parcel for different, less favorable treatment than the neighboring ones[.]'"   *C/S 12th Ave. LLC v. City of New York*, 32 A.D.3d 1, 9 (1st Dep't 2006) (quoting *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 132 (1978)).   By invoking equal protection rights in the context of allegations of reverse spot zoning, Plaintiffs appear to assert a "class-of-one" equal protection claim.   *See DC3, LLC v. Town of Geneva*, 783 F. Supp. 2d 418, 423 (W.D.N.Y. 2011) (treating a similar claim as a class-of-one theory); *see also C/S 12th Ave. LLC*, 32 A.D.3d at 9 (treating a reverse spot zoning claim as a violation of the Equal Protection Clause). Such a claim exists "where the plaintiff alleges that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010).   In pleading such a claim, plaintiffs must plausibly allege that they are "prima facie identical" with a comparator such that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment."   *Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019).   Plaintiffs' equal protection claim fails because the proposed allegations in the declaration fail to identify a single comparator, let alone a "*prima facie* identical" comparator.   *Hu*, 927 F.3d at 92.[7]

---

[7] Given the failure on the merits, the Court need not address whether the equal protection claim is ripe under the prudential finality requirement for land use claims.   However, for the reasons discussed in relation to the ripeness of the takings claim above, the Court also finds that the equal protection claim is ripe and not barred by the finality requirement.

Therefore, Plaintiffs are granted leave to replead their regulatory takings claim, but the Court finds that amendment of the equal protection claim based on reverse spot zoning would be futile and denies leave to replead that claim.[8]

### ii. State Law Claims

Again, the proposed amendments in the declaration do not add new state law claims, and therefore, the Court merely needs to assess whether the proposed allegations are sufficient to state a takings claim and an equal protection claim under the New York State Constitution.[9] Defendant makes several arguments against such claims, including that they are procedurally barred by Gen. Mun. L. §50-e due to Plaintiffs' allegedly inadequate Notice of Claim and that they impermissibly duplicate the federal Constitutional claims.

First, the Court finds it unnecessary to determine whether the Notice of Claim was adequate under Gen. Mun. L. §50-e because even if it was not, Defendant was not prejudiced. Defendant was able to conduct a full §50-h hearing of Plaintiff Lotruglio based on the Notice of Claim. *See* Dkt. No. 8-2; s*ee generally Hoffman v. New York City Hous. Author.*, 187 A.D.2d 334, 337 (1st Dep't 1992) (finding no prejudice, and thus refusing to bar claims, where defendant conducted §50-h hearing).

However, the proposed amendments in the declaration cannot save these claims because

---

[8] The Court disagrees with Defendant's argument that both the federal claims are moot as alleged in the declaration. Though the declaration clarifies that Plaintiffs have sold the Property, the claims asserted seek damages for the impact of Defendant's conduct on the value of the Property at the time of the sale and the loss of rental income. *See Buckhannon Bd. v. West Virginia Dep't of Health and Human Resources*, 532 U.S. 598, 608-09 (2001) (rejecting mootness argument where defendants change course of conduct because "so long as the plaintiff has a cause of action for damages," the claim survives); *Marin v. Town of Southeast*, 136 F. Supp. 3d 548, 562 (S.D.N.Y. 2015) (rejecting mootness argument where town ordinance was repealed because claims sought damages).

[9] Plaintiffs have disavowed a state law "vested rights" claim. Dkt. No. 19 at 24.

"[w]here claims are brought pursuant to the New York State Constitution that mirror claims brought under Section 1983, courts in this Circuit have held that there is no private right of action on the state constitutional claims." *Wright v. City of Syracuse*, 5:10–CV–0661 (GTS/TWD), 2014 WL 1293527, at *18 (N.D.N.Y. Mar. 31, 2014) (listing cases).   Thus, amendment based on the state law claims as alleged in the declaration would be futile.

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendant's motion to dismiss, Dkt. No. 8, is **GRANTED**; and the Court further

**ORDERS** that Plaintiffs' Complaint, Dkt. No. 2, is **DISMISSED**; and the Court further

**ORDERS** that Plaintiffs are **GRANTED LEAVE TO REPLEAD** within 30 days in accordance with this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  March 26, 2025
      Albany, New York

Anne M. Nardacci
U.S. District Judge

25